# Richmond.

EAVES v. VIAL.

FEBRUARY 15, 1900.

1. PARTITION—*Deed—Consideration—Res Judicata.*—Whether a deed, absolute on its face, which conveys an undivided interest in land is a deed of gift, or upon a secret trust agreed on between the parties, is not involved in a subsequent suit for partition between several joint-tenants of land in which the interest of the grantor is assigned to the grantee, and the grantor is not precluded by such suit from asserting the trust in a subsequent suit against his grantee.

2. DEEDS—*Consideration—Evidence to Contradict Deed—Recitals.*—A deed which purports to have been made for a valuable consideration cannot be shown to be voluntary in order to raise a trust in favor of the grantor, and if there was in fact no consideration, but the deed recites a pecuniary consideration even merely nominal, as paid by the grantee, this statement raises a conclusive presumption of an intention that the grantee is to take the beneficial estate, and extrinsic evidence is not admissible to contradict the recital, and to show that there was in fact no consideration, except in cases of fraud or mistake.

3. FRAUD—*Undue Influence—Confidential Relations.*—Whether or not parties occupy confidential relations toward one another is immaterial in the absence of any charge of fraud, or statement of facts, which, if true, would make out a case of fraud, actual or constructive, in their dealings with one another. Fraud cannot be the subject of trial until it has been put in issue by the pleadings.

4. STATUTE OF FRAUDS—*When to be Specially Pleaded.*—It is not necessary in order to set up the statute of frauds as a defence that it should be specifically pleaded, unless the existence of the agreement sued on is admitted by the answer, or the bill, in addition to the general allegation that the agreement was made, alleges such acts done in part performance, or such equitable circumstances as would justify the court in enforcing it; in which case the defendant must, it seems, directly traverse the allegation of equitable circumstances at the time he pleads, or by answer insists upon, the statute as preventing the plaintiff's recovery on the mere verbal agreement.

Opinion.

5. STATUTE OF FRAUDS—*General Issue—Waiver.*—At law a defendant may insist upon the benefit of the statute of frauds by the general issue, or in equity by simply denying in his answer that any such agreement was ever made as that charged in the bill. The general denial will put the plaintiff to the proof of the agreement, and, if it be within the statute of frauds, he must produce a writing at the trial or hearing unless the defendant waives his right to require it by allowing the agreement to be proved by oral testimony.

6. STATUTE OF FRAUDS—*Waiver—Appeal and Error.*—If parties without objection permit a contract to be proved by oral testimony, which, under some statute, could only be proved by writing, and the cause is heard and decided on such testimony, they will be deemed to have waived the right to require a writing, and will not be allowed to insist on a different rule in this court. The case must be heard and determined upon the same evidence in both courts.

Appeal from a decree of the Chancery Court of the city of Richmond, pronounced January 16, 1899, in a suit in chancery, wherein the appellee was the complainant, and the appellant and her husband were the defendants.

*Affirmed.*

The opinion states the case.

*Sol. Cutchins* and *Leake & Carter*, for the appellant.

*A. W. Patterson*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The bill in this case was filed by the appellee, who alleged, among other things, that his father, E. P. Vial, died in the year 1883, leaving certain real estate which, by his last will and testament, he directed should be held by his widow until his youngest child arrived at the age of twenty-one years, when it should be equally divided between his (five) children; that in the year 1885, at the instance of one of the children (Mrs. Shepperd), her interest in the said real estate was assigned and conveyed to her by virtue of proceedings instituted for that purpose; that, in the year 1888, the widow of the testator de-

parted this life, and in the year 1897 the residue of the real estate was partitioned in a suit brought in part for that purpose, between the parties entitled; that in that suit the share of the appellee therein was assigned to his sister, the appellant, it appearing that she had acquired the legal title thereto by deed dated February 6, 1896.

After giving at length the proceedings had in the last-named case, the appellee alleged that one-half of the property assigned to his sister, the appellant, in that suit belonged to him; that his deed to her of February 6, 1896, was executed voluntarily, and without any consideration whatever moving from her, with the distinct understanding and agreement that whenever he desired and requested her she would reconvey the same to him; that he made the conveyance because at that time he was leading a very wild life, having already run through with $1,500 of insurance money which came to him from his mother's estate, and, feeling that he could not trust himself, he determined to place his real estate temporarily beyond his own reach; that he had every confidence in his sister, and firmly believed that she would carry out the agreement in good faith, and reconvey the property to him whenever he desired it; that since the partition proceedings, to which he was a party, he has made a demand upon his sister for a reconveyance of the property, but, to his great surprise, she refused to comply with the agreement, claiming that his conveyance to her was an absolute gift of his interest in the property, and that he could not compel a reconveyance. He further alleged that he was advised that he was a tenant in common with the appellant in the property assigned to her in the partition suit, and had the right to have his half interest therein set apart to him, and prayed that the deed of February 6, 1896, be set aside and annulled, and partition of the land be made between him and his sister.

The appellant filed her demurrer and answer to the bill.

In the answer, she admitted the allegations of the bill as to

the death of her father and mother, the disposition made of his property by his will, the proceedings for its partition and the assignment of the appellee's interest therein to herself. After explaining the circumstances under which the deed of February 6, 1896, was executed, she denied that there was any understanding or agreement whatever between her brother and herself when that conveyance was made that she should reconvey the property to him, that he had any interest whatever therein, or was in any way entitled to a reconveyance thereof.

Upon a hearing of the cause, the trial court, being of opinion that the husband of the appellant, who had been made a party defendant, was not a proper party either in his own right or as administrator of the testator's estate, sustained the demurrer in that particular, and dismissed the bill as to him; and, being further of opinion that it was established by the evidence that the deed of February 6, 1896, was made with the understanding and agreement that the appellant would reconvey the property to the appellee whenever called upon by him to do so, adjudged that he was entitled to an one-half interest in the real estate assigned her in the partition suit of *Eaves, &c.* v. *Vial, &c.*, and decreed that appellant should reconvey the same to him, and that if they could not agree upon a division of the property the court would make partition thereof.

From that decree this appeal was allowed.

The first error assigned is that the court erred in not dismissing the bill upon demurrer, because it shows upon its face that, in the partition suit of *Eaves, &c.* v. *Vial, &c.*, to which the appellee was a party, the appellant's claim to the property in controversy was distinctly set forth, and it was adjudged and decreed therein that the property had been acquired by her under the deed of February 6, 1896, and that the question raised was therefore *res judicata.*

Without passing upon the question whether that defence could be made by demurrer, it is sufficient to say the rights

which the appellee is now asserting in this case were not in issue, nor were they involved in that case.

Whether the appellant was the absolute owner of the lands conveyed by the deed of February 6th, as she claims, or she held them subject to the right of the appellee to have a reconveyance when he demanded it, as he claims, she was clearly entitled to have them assigned to her in the partition proceedings, for at that time the appellee had made no demand upon her for a reconveyance, there was no controversy between them, and no reason why the question raised in this case should have been raised in that. The only effect of the proceedings in that case upon the rights of the appellee was to set apart the interest which he now claims with that of the appellant, and to clothe her with such title and rights in it as she had acquired from him, without any prejudice to any agreement (if any such there was) between them for a reconveyance.

The second assignment of error is that upon the merits the bill should have been dismissed, as the case was clearly with the appellant.

The agreement set up in the bill, and which it was decreed by the trial court should be specifically enforced, was not in writing, and could only be established by oral testimony, which would seem to be in violation of the statute of frauds, and also of the rule that a written instrument cannot be varied by a contemporaneous parol agreement.

It seems that a deed which purports to be made for a valuable consideration cannot be shown to be voluntary in order to raise a trust in favor of the grantor, because such evidence is directly at variance not only with the statute of frauds, but with the rule that a written instrument cannot be varied by parol evidence, and where there is in fact no consideration, but the deed recites a pecuniary consideration, even merely nominal, as paid by the grantee, this statement raises a conclusive presumption of an intention that the grantee is to take the beneficial estate, and

destroys a possibility of a trust resulting to the grantor, and extrinsic evidence is not admissible to contradict the recital, and to show that there is in fact no consideration, except in cases of fraud or mistake. 2 Pom. Eq. Jur., secs. 1035, 1036; *Leman* v. *Whitely*, 4 Russell, 423; *Pusey* v. *Gardner*, 21 W. Va. 469; *Hogan* v. *Jaques*, 19 N. J. Eq. 123; *Squire* v. *Hardin*, 1 Paige, 494; Browne on Statute of Frauds, sec. 111.

It is argued by the appellee's counsel that the grantee in the deed in question stood in a confidential relation to the grantor, and that the presumption is that the conveyance was procured by undue influence and is therefore *prima facie* fraudulent. Whether any "confidential relation" existed between the grantee and grantor when the deed was executed it is unnecessary to consider, as there is no charge of fraud in the bill, and no statement of facts which, if true, would make out a case of fraud, actual or constructive. Nothing, least of all fraud, can be the subject of trial until it is put in issue by the pleadings. *Alsop, Mosby & Co.* v. *Catlett & Jenkins*, 97 Va. 364.

But neither the statute of frauds nor the rule of law that the terms of a written instrument cannot be varied by contemporaneous parol evidence seems to have been relied on in the trial court. It is not necessary, in order to set up the statute of frauds as a defence, that it should be specifically pleaded, unless the existence of the agreement sued on is admitted by the answer, or the bill, in addition to the general allegation that it was made, alleges such acts done in part performance, or such other equitable circumstances as would justify the court in enforcing it; in which case the defendant must, it seems, directly traverse the allegation of equitable circumstances at the time he pleads, or by answer insists upon, the statute as preventing the plaintiff's recovery on the mere verbal agreement.

At law a defendant may insist upon the benefit of the statute by the general issue, or in equity, by simply denying in his answer that any such agreement was ever made as that charged

in the bill.   This general denial will put the plaintiff to the proof of the agreement, and, if it be within the statute of frauds, he must produce a writing at the trial or hearing unless the defendant waives his right to require it by allowing the agreement to be proved by oral testimony.   Judge Tucker, in *Argenbright* v. *Campbell*, 3 H. & M. 164; *Bridgeway* v. *Wharton*, 3 De Gex, Mc. & G. 677; *May* v. *Sloan*, 101 U. S. 231; *Ontario Bank* v. *Root*, 3 Paige, 478; *Billingslea, &c.* v. *Ward*, 33 Md. 48; Sugden on Vendors, ch. 4, sec. —, part 5, p. 5; Rob. Pr. 220; 2 Reed on Statute of Frauds, secs. 516, 521; Browne on Statute of Frauds, sec. 511.

The answer of the appellant denied the agreement set up in the bill, but she made no objection to the oral testimony offered by the appellee to prove it when the witnesses were examined, nor was any exception afterwards taken to their depositions, nor objection made to that evidence in any way, but both parties seem to have proceeded with the case upon the assumption that parol evidence was admissible to prove or disprove the agreement, and the decree of the court shows that the case was submitted for decision upon the pleadings, exhibits, and "the testimony of the witnesses on either side," and that the court based its decree upon the ground that the claim of the plaintiff, as set out in the bill, had been "established by the evidence."   The action of the appellant in permitting the case to be heard and determined by the trial court upon the oral testimony taken to prove the agreement, without objection, must, we think, be regarded as a waiver of the statute of frauds, and of the rule of law that contemporaneous oral evidence is not admissible to vary the terms of a written agreement, and the case must be heard and determined by this court upon the same evidence upon which it was heard and determined in the trial court. *Miller* v. *Harper*, 63 Mo. App. 293; *Allen* v. *Richard*, 83 Mo. App. 55; *Tibbs* v. *Weatherwax*, 23 Cal. 58; *Zabil* v. *Myenhuis*, 83 Iowa, 756, 759.

Opinion.

See, also, *McVeigh* v. *Chamberlain*, 94 Va. 73, and cases cited; 4 Minor's Inst. (3d ed.), 845.

From the record in this case, including the oral testimony, it appears that when the deed of February 6, 1896, was executed, the vendor, who had only reached the age of twenty-one years a few months before, was leading a very dissipated life, and had already wasted one-fourth or more of the estate which he had derived from his parents; that by that deed he conveyed all of his real estate to his sister, the appellant, with whom he was then living, in order that it might not be wasted by him as the insurance money received from his mother's estate had been. The interest conveyed was worth more than four thousand dollars, and was all the property that he owned except three or four hundred dollars in money. For this conveyance of more than four thousand dollars' worth of property he has never received a dollar's consideration. These facts are practically admitted. The appellee testifies that he made the conveyance at the urgent request of the appellant, for the purpose of putting his property temporarily beyond his reach, with the distinct understanding and agreement that she would reconvey the same to him upon demand, or when he was in a condition to take care of it. Four or five witnesses testify to declarations made by the appellant which corroborate the appellee's testimony. The appellant testifies that she did not urge her brother to make the conveyance; that he made it of his own motion, and gave it to her absolutely, without any understanding or agreement that she was to reconvey it, but admits that she had always intended to give him back all, or at least a part, of it. Her husband and her two brothers who live with her testify that they heard the conversation at the breakfast table the morning that the appellee determined to make the deed, and that they did not hear anything said about a reconveyance, but neither of them claim to have heard the conversations on the subject which both the appellant and appellee testify took place during the preceding week.

If the respective contentions of the appellant and appellee were equally reasonable and probable, there might be some question as to whether the parol agreement set up by the appellee had been satisfactorily proved, but the contention of the appellant that her brother, a young man just beginning life, had conveyed to her more · than four thousand dollars' worth of property, practically stripping himself of everything he owned, without consideration, and without any understanding or agreement for a reconveyance, is so unreasonable and improbable that, under the evidence in the case, we are satisfied that it is not true, and we are further of opinion that the agreement for a reconveyance, as set up in the bill, is sufficiently established to entitle the appellee to have it enforced, and that the Chancery Court did not err in so decreeing.

*Affirmed.*